Filed 5/2/25  Marriage of Filipp CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of FABIAN and KRISTI FILIPP. | D081558 |
| KRISTI FILIPP, | |
| Respondent, | (Super. Ct. No. 19FL014075C) |
| v. | |
| FABIAN VOLKER FILIPP, | |
| Appellant. | |

APPEALS from postjudgment orders of the Superior Court of San Diego County, Victor N. Pippins, Judge.  Affirmed.

Fabian Volker Filipp, in pro. per., for Appellant.

No appearance for Respondent.

Appellant Fabian Volker Filipp, a self-represented litigant, appeals multiple orders in his dissolution action with his former spouse, respondent

Kristi Filipp.[1]  He contends the family court erred by (1) misapplying the law in awarding Kristi $60,000 in Family Code[2] section 2030 attorney fees; (2) issuing various discovery orders, including imposing discovery sanctions against him and denying them against Kristi; (3) violating procedural rules and misapplying the law in its child custody and visitation orders; (4) issuing a turnover order for certain real property in Merced, California and appointing an elisor; and misapplying law and violating procedures in ordering the sale of real property in Nevada.  We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

Fabian does not provide a traditional statement of facts and procedure, but structures his brief in a way that purports to set out relevant background with each of his challenges.  We recited the basic facts concerning the parties' marriage and children in our prior opinion:  "Kristi and Fabian married in April 2014 and separated in July 2019.  They had two children during their marriage, a son born in June 2014 and a daughter born in April 2016.  Kristi filed a petition for dissolution of marriage in November 2019."  (*In re Marriage of Filipp, supra,* D081427, fn. omitted.)

---

[1]    We refer to the parties by their first names for clarity, not out of disrespect.  This court has already considered one prior appeal filed by Fabian in which we affirmed an order invalidating a postnuptial property agreement between the parties.  (*In re Marriage of Filipp* (May 22, 2024, D081437) [nonpub. opn.]).  As in that appeal, Kristi has not filed a respondent's brief.  Her nonappearance does not relieve us from adjudicating the merits of this appeal.  (See *In re Bryce C.* (1995) 12 Cal.4th 226, 232-233 ["if the respondent fails to file a brief, the judgment [or order] is not automatically reversed"]; *In re Marriage of Everard* (2020) 47 Cal.App.5th 109, 111, fn. 1.)

[2]    Undesignated statutory references are to the Family Code.

2

The record reflects that since the dissolution petition's filing, the parties underwent several hearings addressing spousal and child support, as well as attorney fees and costs.

In October 2021, the court held a hearing at which it considered a request from Fabian to modify child custody and visitation, and heard Fabian's and Kristi's testimony concerning those matters. The court ultimately adopted a September 2021 family court services report.[3] It found Fabian "lacks credibility in his answers regarding past events and his reasoning for submitting certain lodgments" concerning his claim that Kristi had engaged in physical child abuse.

In January 2022, the court set a trial on all "issues or remaining issues of property, custody and visitation, child support, spousal support, attorney's fees and sanctions." In a declaration filed in advance of the trial, Kristi reported that the court in November 2020 had ordered Fabian to pay $1,509 in child support effective December 1, 2019, and $516 in spousal support effective December 1, 2020. She recounted Fabian's work history and earning capacity, and his income producing assets. Specifically, she averred that Fabian owned five properties: three residential properties in Merced, California, one residential property in Heidelberg, Germany, and one residential property in San Diego, California with an accessory dwelling unit. According to Kristi, Fabian had estimated the value of all but the San Diego property at $765,672 in one income and expense declaration, but more recently reported his overall real estate value as $488,576. She estimated the

---

[3]    Kristi later filed a declaration recounting that in October 2021, the court ordered the parties to share joint legal custody, with Kristi having primary physical custody and Fabian having visitation on Wednesdays from after school to Thursday morning, and alternate weekends Friday after school to Monday morning.

aggregate value of the real property at $1,995,762, and asserted Fabian had underreported the value of his real estate by approximately $1.5 million. Kristi averred that Fabian reported receiving nothing in rental income, while at the same time spending over a thousand dollars a month to maintain the rental properties. She estimated that if Fabian were appropriately managing his assets, he would receive approximately $8,300 in monthly income from them. She asserted that in April 2021, without notifying her or the court and in violation of automatic temporary restraining orders, Fabian had purchased a piece of property that he was renting to tenants. She pointed out that the family court had found Fabian not credible in November 12, 2020 and January 21, 2022 orders. Kristi asked the court to award her $10,000 in section 2030 attorney fees and $5,000 in section 271 sanctions, in addition to prior awards. She asked it to impute income to Fabian commensurate with his earning capacity and assets.

On July 14, 2022, the family court considered Kristi's requests relating to discovery and attorney fees.[4] In October 2022, the court issued its findings and an order after that hearing granting Kristi's motion to compel discovery responses from Fabian, and ordering Fabian to pay Kristi $4,500 in attorney fees as a discovery sanction, as well as $30,000 in attorney fees under section 2030. In granting Kristi's motion to compel discovery responses from Fabian, the court found "[t]he proof of personal service executed by a certified process server on [Fabian] on [April 10, 2022] at his present address is presumptively valid" and denied Fabian's request for an evidentiary hearing with the

---

[4]     Earlier that month, after hearing testimony from Fabian and another witness as well as argument from Kristi's counsel, the family court denied Fabian's request to modify support. It found "there has not been a material and substantial change of circumstance to warrant a modification . . . ." This court dismissed Fabian's appeal from that order as untimely filed.

process server.  The court based its section 2030 attorney fee order on a finding of "a clear disparity between the parties' finances . . . based on assets and not income."[5]  At some point, Kristi initiated judgment enforcement proceedings, including Fabian's debtor's exam.

In November 2022, the court conducted a hearing on custody and visitation.  In April 2023, it issued findings and an order declining to modify custody and visitation, ruling it was not in the children's best interest to do so.  The court continued proceedings on Kristi's judgment enforcement, and her requests for further discovery and a judicial determination of the unsatisfied judgments.

In May 2023, the family court conducted a hearing to address several requests and filings, including Kristi's request for an additional payment of attorney fees and for a property turnover order to enforce Fabian's unpaid attorney fee obligations.  At the hearing, Kristi's counsel represented that Fabian had purchased one of his properties using $500,000 in liquid funds.  She advised the court that if it did not order the sale of property, Kristi would not be able to afford counsel.  The court acknowledged both parties had limited income, but stated as to assets, "I don't see a way that I could find that [Fabian] does not have real estate assets in excess of a million dollars, being conservative."

Though the court found some lack of clarity about Kristi's ability to earn, that was "dwarfed by the chasm between the assets that are available to each party for attorney's fees."  It found Fabian had "somewhere between six to eight or so pieces of real property . . . in his control.  I mean, we're looking at orders of magnitude probably here.  There's a clear disparity based

---

[5]     On December 5, 2022, the court issued identical findings and an order for the same July 14, 2022 hearing.

5

on the assets." The court found Kristi's $30,000 attorney fee request was reasonable: "This is clearly trench warfare somewhat in terms of a dissolution case. . . . And I've done this case long enough that . . . I'm pretty clear what it's going to take to get from here to there." The court confirmed that Fabian had not paid the earlier $30,000 attorney fee award or the $4,500 discovery sanction. It found his outstanding balance was $68,000, subject to credits he could prove.

The court also granted Kristi's request for a turnover order of specific property in Merced, California. Its findings and order after hearing state: "The debtor's examination [of Fabian] concluded today and the court grants [Kristi's] request for turn over orders pursuant to [Code of Civil Procedure section] 708.205. The court grants turnover of the property located at . . . [East] 27th Street, Merced, [California] by June 8, 2023, via interspousal transfer deed. [¶] . . . The court has no faith [Fabian] will follow an order to reasonably sell the property[,] [g]iven the years of delay, obfuscation, lies, and misstatements under oath by [Fabian]. For example, at the evidentiary hearing regarding the post-nuptial agreement on July 5, 2022, [Fabian] testified regarding when he purchased this property. The court required him to come in with the deed to the property. When he came up with the deed it proved the home was purchased during a period which [Fabian] testified was not true, he had an outlandish excuse of why the deed was improperly recorded. The court did not find this credible. This pattern of conduct contributes to the court's lack of faith that [Fabian] would now change course and comply with the court's order regarding this property. If the court were to leave [Fabian] in charge of the sale the court anticipates excessive litigation would be the result. As a result, the court orders [Fabian] to execute an interspousal transfer deed to the property . . . granting [Kristi]

6

exclusive authority to list and sell the home by June 8, 2023."[6]  The court further ruled:  "In making this order . . . the court finds [Fabian] has grossly mischaracterized his assets and that community property funds that existed at separation are currently held in real estate in [his] control.  The court reserves over [Kristi's] request that [Fabian] be deemed in violation of the automatic temporary restraining orders and in breach of fiduciary duty due to liquidation of community property.  The court reserves these requests to the trial currently set in October 2023."

## DISCUSSION

### I. *Fabian's Augmentation Requests*

We begin with Fabian's several motions to augment the record.  We granted some of his requests, deferred others to consider with this appeal and granted in part and deferred in part one of the requests.

All of Fabian's motions include the following boilerplate language:  "Appellant is requesting that these documents be added to the record because

---

[6]     The court further ruled:  "Both parties are to cooperate in the signing of any documents to effectuate the transfer and sale.  The court will consider granting an elisor on an ex parte basis to effectuate the transfer and sale given the delays by [Fabian] in paying court orders.  [Kristi] may collect the entire $68,000 owing to her based on the above outlined orders from the sale proceeds.  The remainder of the sale proceeds are to be preserved in [Kristi's counsel's] trust account until further agreement or court order.  The court retains jurisdiction to re-allocate, reduce, or increase the amount of attorney fees ordered to either party.  The court further retains jurisdiction regarding the allocation of sale proceeds and characterization of . . . [the property].  [¶] . . . The court finds there is no prejudice to [Fabian] in ordering the liquidation of [the property] given the amount of real property assets in the case.  The court finds [Fabian] could be made whole at the conclusion of the dissolution.  While the court cannot unliquidate this property the court can substitute other funds or property and there will be plenty of ways for [Fabian] to be made whole if he prevails on appeal, at trial, or any other point."

7

they are relevant to the underlying motion and orders on appeal, as well as preparation and certification of the settled statement." Fabian cites California Rules of Court, rule 8.155(a)(1)(A) and (B) as well as rule 8.137.

Fabian's bare and unspecific representation that the materials attached to his motions are relevant to the underlying motions and orders on appeal, or to the preparation of a settled statement is, in our view, not sufficient to demonstrate augmentation is appropriate.

Nonetheless, we address the deferred requests as follows: We deny Fabian's request to augment the record with a reporter's transcript of proceedings that took place on January 3, 2024, after the filing of all of his notices of appeal. Though that hearing concerns Fabian's attempt to propose a settled statement of the November 2022 hearing, the transcript reflects that the court refused to consider the proposal after it stated its belief that Fabian had improperly audio-recorded the proceedings so as to prepare it. Even if Fabian adequately raised claims concerning the court's consideration of his purported settled statement,[7] we would not have jurisdiction to consider them, as mandamus is Fabian's remedy. (*Murphy v. Stelling* (1903) 138 Cal. 641, 642-643.)[8] And even if an appeal was the appropriate vehicle to

---

[7] At various points in his brief, Fabian asserts that the court "breached rules relating to the preparation and settlement of the appellate record . . . exacerbating these procedural deficiencies and affecting the overall fairness of the proceeding."

[8] It is long-established that "*mandamus* is the proper and exclusive remedy when a trial judge refuses to settle a statement which it is his duty to settle; that is to say, in a case where the moving party has strictly and fully complied with the requirements of the statute in proposing and presenting the statement for settlement. . . . [A] wrongful refusal to settle a statement is not the subject of appeal, but is to be corrected by a writ of mandate." (*Murphy v. Stelling, supra*, 138 Cal. at pp. 642-643.)

challenge any court order concerning a settled statement, he did not separately appeal any such order. "We have no jurisdiction over an order not mentioned in the notice of appeal." (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170.) Fabian has not demonstrated the transcript is relevant to the issues on appeal.

We deny Fabian's request to augment the record with three proposed "settled statements," which appear to be verbatim transcriptions from unreported proceedings that took place on November 17, 2022, July 5, 2022 and July 14, 2022. One of these purported statements is the November 2022 document referenced above, which the family court refused to consider. Otherwise, Fabian does not demonstrate that any of these purported statements were certified, stipulated to, or properly filed in this court. (See Cal. Rules of Court, rule 8.137(h).) He has not demonstrated compliance with any of the requirements for preparing a settled statement, or provided authority that would require this court to augment the record with such unapproved materials. We reach the same conclusion as in Fabian's prior appeal, in which he sought to submit another apparently transcribed statement. Under California Rules of Court, rule 8.137(a), a "settled statement is a summary of the superior court proceedings *approved by the superior court*." (Italics added.) It is for the trial court, not this court, to settle a proposed statement. (See *Marks v. Superior Court* (2002) 27 Cal.4th 176, 195 [it is for the trial court to settle a proposed statement; it has " 'full and complete power' " to make a final determination of its content]; *Sidebotham v. Superior Court* (1958) 161 Cal.App.2d 624, 628 [appellate court has "no familiarity with the oral proceedings" from the trial court and therefore has no basis to "measure the adequacy or inadequacy" of a settled statement].)

9

We deny Fabian's request to augment the record with three requests for judicial notice:  The first, filed on January 3, 2024, asked the family court to take judicial notice of a proof of service for a settled statement and designation of record.  The second, filed January 2, 2024, asked the court to take judicial notice of job openings in Kristi's vocational field, then engaged in lengthy argument concerning the parties' earning capacity.  The third, also filed January 2, 2024, asked the family court to take judicial notice of property deeds and taxes for a trust of which Kristi was a beneficiary.  As to the latter two requests, Fabian does not show the items identified in them were before the court when it made any of the appealed from orders, all of which predate January 2024.  "The . . . augmentation . . . process does not allow parties to . . . make records, or litigate issues which they neglected to pursue earlier."  (*People v. Tuilaepa* (1992) 4 Cal.4th 569, 585.)  And because Fabian does not properly challenge the family court's handling of his proposals for settled statements, he does not establish the relevance of the January 3, 2024 request.

We deny the request to augment the record with Fabian's two December 1, 2023 requests for statements of decision, as those items are already in the record.  (See *People v. Briggs* (1962) 58 Cal.2d 385, 406 [motion to augment was properly denied when material was already part of the appellate record].)

## II. *Principles of Appellate Review*

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment.  [Citations.]  'This is not only a general principle of appellate

10

practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' [Citation.] ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' [Citation.] 'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; see also *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Association* (2023) 94 Cal.App.5th 1050, 1070.) These "rules apply to a party appearing in propria persona as to any other party." (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 205.)

As part of the presumption of correctness, this court will assume that all express or implied findings in support of the challenged action are themselves supported by substantial evidence. (E.g., *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134; *In re Marriage of Fink* (1979) 25 Cal.3d 877, 887; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) Fabian as the appellant must "[p]rovide a summary of the significant facts" (Cal. Rules of Court, rule 8.204(a)(2)(C)) for his contentions. In challenging the court's factual findings, he is thus required to state in his opening brief all evidence pertinent to the points. If he does not do so, we may treat the issue as waived. (*In re Marriage of Fink*, at p. 887; *Foreman*, at p. 881.)

11

As a broad matter, Fabian's appellate briefing and record contain significant deficiencies. His opening brief fails to accurately summarize the briefing and evidence submitted by Kristi, and recounts evidence favorable to him only. As explained below, this forfeits many of his appellate arguments. (See *Foreman & Clark Corp. v. Fallon, supra,* 3 Cal.3d at p. 881 [Appellants " 'are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence.* Unless this is done the error is deemed to be waived' "].)

### III.  *Order Awarding Kristi Attorney Fees Under Section 2030*

Fabian contends the family court erred by assigning him to pay Kristi $60,000 for her attorney fees based on their disparity in assets. He argues de novo review applies to the court's procedural and legal errors. According to Fabian, the court erred because its order "relied exclusively on an incomplete and speculative assessment of asset disparity without properly evaluating the parties' liquid and real assets, their actual financial needs or their ability to pay." He argues we must reverse the order because the "incomplete and inaccurate determination failed to adhere to the statutory requirements of [section] 2030 . . . ."

A.  *Legal Principles*

Sections 2030 and 2032 authorize the court in an enforcement action to "award fees and costs between the parties based on their relative circumstances in order to ensure parity of legal representation in the action." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 974, fn. omitted.) Under subdivision (a)(2) of section 2030, "[i]f the findings demonstrate disparity in access [to funds] and ability to pay, the court shall make an order awarding attorney's fees and costs." (*Ibid.*)

12

The word "shall" reflects the mandatory nature of these provisions where a court makes a finding of relative disparity. (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050; see also § 12 [when used in the Family Code, " '[s]hall' is mandatory and 'may' is permissive"].) Thus, it is no longer the case that fee awards in these circumstances are left to the family court's "sound" or "broad" discretion. (*In re Marriage of Morton*, at p. 1049; *In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 25.)

"When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties." (§ 2030, subd. (a)(2).) An award of fees is limited to the amount "reasonably necessary" to maintain or defend the proceeding (§ 2030, subd. (a)(1)) and must be "just and reasonable under the relative circumstances of the respective parties." (§ 2032, subd. (a).) Under subdivision (b) of section 2032, "[i]n determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in section 4320." (*Ibid*.) In determining one party's relative need and the other party's ability to pay, "the family court may consider all evidence concerning the parties' current incomes, assets, and abilities, including investment and income-producing properties." (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 662.)

This court reviews the family court's ultimate decision for abuse of discretion (*In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457,

13

469), but assesses its factual findings under the deferential substantial evidence standard. (*In re Marriage of Knox, supra,* 83 Cal.App.5th at p. 25, citing *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.)

B. *First $30,000 Fee Award*

The court made its first $30,000 attorney fee award to Kristi at a July 14, 2022 hearing, which was unreported. As stated, in support of its order, the court found "there is a disparity between the parties' finances and the record supports a $30,000 fee award based on [Kristi's] [section] 2030 need[-]based attorney fees [and] costs request." It found "there is a clear disparity between the parties' finances and it is based on assets and not income" and that Fabian had "no hardship." The court ordered the award payable in full within ninety days of the hearing.

Though the record contains Kristi's April 11, 2022 declaration requesting attorney fees, as well as two of her attorneys' declarations, there is no reporter's transcript of the July 14, 2022 hearing. Thus, we do not have a complete picture of the proceedings that led to the later October 25, 2022 findings and order after hearing, including the arguments and evidence presented to the family court. We therefore cannot determine the basis of the court's order, and whether it was improper, as Fabian contends. (*Estate of Fain* (1999) 75 Cal.App.4th 973, 997 [absent a reporter's transcript, "the judgment must be *conclusively presumed correct* as to *all evidentiary matters.* . . . The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence"]; *Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039 ["in the absence of a required reporter's transcript and other documents, we presume the judgment is correct"].) Fabian has

14

failed to show the court's first order that he pay Kristi $30,000 in need-based attorney fees was procedurally or substantively erroneous.

C. *Second $30,000 Fee Award*

The family court made its second $30,000 fee award during the May 2023 hearing. It thereafter made express findings that "[w]hile [Fabian] argues lack of clarity regarding [Kristi's] ability to earn, the court finds any potential effect of [Kristi] having a higher earning capacity, if true, is dwarfed by the chasm of assets that are available to each party. There is no indication that even the sale proceeds that [Kristi] would expect to receive from the residence she owns with her sister [at] Aspen Court, would come close to representing the equity there is in the six (6) or so pieces of real property that [Fabian] has in his control." Based on the "clear disparity between the parties' assets" the court found "the record supports an additional $30,000 fee award based on [Kristi's] need and [Fabian's] ability to pay attorney fees" and that Kristi's request for an additional $30,000 was "reasonable, given the qualifications of counsel, work already performed, and work needed to perform in this case."

Fabian does not address the main appellate issue, that is, whether substantial evidence in the record supports the family court's conclusion, which specifically addressed the parties' assets, as well as Kristi's needs and Fabian's ability to pay. To the extent Fabian refers to the evidence, it is to state facts favorable to himself, often without citing to the record or citing to matters that do not support his proposition. " 'It is not incumbent upon this court to search a record of this character to determine a point raised in this manner.' " (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.) Fabian's failure to summarize the relevant facts supporting the court's order, and his failure to support his assertions with record citations, forfeits the

15

points. (See *Cameron v. Las Orchidias Properties, LLC* (2022) 82 Cal.App.5th 481, 504; *Schmidlin*, at pp. 737-738.)

In any event, Fabian's various arguments are unavailing. Without support, he asserts that if the court makes a factual determination relying on "guesstimates of financial disparity alone, it constitutes an abuse of discretion and warrants reversal." He relies on his asserted disability or insufficient legal representation, while ignoring the family court's factual findings concerning his real property assets or his credibility. He makes assertions without reasoned legal analysis or case authority. We are not required to examine undeveloped claims or make arguments for parties. (*Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984-985; see also *H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 963.)

Fabian also attempts to cite *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83 for the proposition that a family court must consider not just financial disparity, but also the case's complexity and actual legal work performed. In *Ciprari*, the Court of Appeal held that the family court in that case erred by denying a wife's posttrial motion for additional attorney and accountant fees under sections 2030 and 2032, explaining that the court had overlooked the fact the husband had hopelessly commingled assets, causing significant amounts of fees to be incurred. (*Ciprari,* at pp. 111-113.) Here, the family court in making its fee award expressly found Kristi's requested fees to be reasonable, referring not to just the parties' financial disparities but to the legal "work already performed, and work needed to perform in this case." The question is whether the family court's ultimate conclusion "falls within the range established by the applicable legal criteria" (*In re Marriage of Knox*, *supra*, 83 Cal.App.5th at p. 25) and Fabian has not overcome the presumption that it did.

16

### IV. *Discovery Orders*

Fabian contends the family court misapplied the law when it awarded Kristi $4,500 in discovery sanctions, granted Kristi's motion to compel when he was not properly served with papers, denied him an evidentiary hearing concerning the adequacy of service of the discovery requests leading to the sanctions order, and denying his own request for costs and sanctions. He refers to the family court's December 22, 2022 and October 25, 2022 findings and orders after hearing, which are identical, as well as the court's April 21, 2023 findings and order after hearing.[9] Without supporting authority, he maintains we review these orders for abuse of discretion.

The underlying hearing for these orders was the same one that went unreported on July 14, 2022. The family court's findings and orders after hearing provide in part: "[T]he following matters were heard and ruled upon at the hearing of July 14, 2022: 1) [Kristi's] request for order filed April 11, 2022[,] for: attorney fees & costs; [section] 271 sanctions, child custody & visitation; [section] 3044 finding, and claim child tax credit; 2) [Kristi's] request for order filed May 31, 2022[,] for: compel discovery responses; enforce subpoena; and discovery sanctions; 3) [Fabian's] request for order filed October 22, 2021[,] for motion to compel; attorney fees & costs, and discovery sanctions; and 4) [Fabian's] request for order filed May 10, 2022[,] for: quash subpoena; object to discovery; protective order, attorney fees & costs, and discovery sanctions." The court's order states that Kristi was

---

9    The portion of the April 2023 order Fabian references simply states: "The court reserves on [Kristi's] sanctions request under [section] 3025.5 and [section] 3177 until the time of trial." Such a nonfinal or intermediate order is generally not appealable. (*In re Baycol Cases I and II* (2011) 51 Cal.4th 751, 754 ["The right to appeal in California is generally governed by the 'one final judgment' rule, under which most interlocutory orders are not appealable"].)

17

present and represented by counsel, and Fabian was present and appeared in propria persona. The order indicates the court "considered oral argument, testimony, and related pleadings" in making its orders.

Though we agree the pertinent review standard for the family court's discovery orders is abuse of discretion (*Randy's Trucking, Inc. v. Superior Court of Kern County* (2023) 91 Cal.App.5th 818, 832),[10] we cannot undertake such review. The substance of Fabian's contentions is factual: he maintains he was not served with Kristi's "discovery documents"; that the proof of service went to an "incorrect address." He argues there are "questions about the server's credibility and the validity of service." He argues the family court erred by failing to conduct an evidentiary hearing to assess the adequacy of service. Fabian maintains the court erred by failing to grant his request for fees and discovery sanctions "despite evidence that [Kristi] improperly and incompletely responded to a granted motion to compel within the court-imposed deadline." Citing what appears to be Kristi's responses to discovery requests lodged with the family court, he asserts he "submitted evidence demonstrating that [Kristi's] responses were improper and incomplete, lacking required formatting and evading discovery obligations." He argues the court abused its discretion when it denied him sanctions for Kristi's noncompliance with discovery, and discovery costs under Code of Civil Procedure section 1033.5 "without sufficient justification"

---

10 " '[T]he appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered.' [Citation.] 'However, "all exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." ' [Citation.] 'Therefore, a discretionary decision may be reversed if improper criteria were applied or incorrect legal assumptions were made.' " (*Randy's Trucking, Inc. v. Superior Court of Kern County*, *supra*, 91 Cal.App.5th at p. 832.)

and "despite [his] evidence and proper pleading . . . ." He states the issue was exacerbated by his "dire financial situation [and] the lack of funding for legal representation . . . ."

The arguments in effect ask us to reconsider the discovery papers anew and judge credibility, which we cannot do on appeal. It is the province of the trial court to assess credibility of witnesses and resolve conflicts in evidence. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925-926; *In re Marriage of Frick* (1986) 181 Cal.App.3d 997, 1016.)

But absent a record of the July 14, 2022 hearing, we presume the court's order—including its findings relating to service of process, the need for an evidentiary hearing, the propriety of the parties' respective requests for discovery sanctions or costs—is supported by what occurred at the hearing. (*Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 483 [a reporter's transcript is indispensable in cases involving the abuse of discretion standard of review]; *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 9 [without a reporter's transcript, reviewing court presumes that what occurred at the hearing supports the trial court order].)

V. *Child Custody and Visitation Order*

A. *Background*

On July 29, 2022, Fabian filed a form request for an order to modify custody and visitation. In response to a section in which the requesting party was to set out supporting facts, Fabian wrote: "School and daycare administrators will be call [*sic*] as witnesses testifying on fraudulent filings of mother under penalty of perjury and repeated violations of custody by mother." He also stated that Kristi had "significantly underreported [her]

19

income." In October 2022, Fabian filed a form "request for court reporter by a party with a fee waiver" for a November 17, 2022 hearing.[11]

Prior to the hearing, a family court services mediator issued a report recommending no changes to the custody arrangement or the parties' parenting plan that the court had put in place in October 2021. The mediator pointed out that Kristi opposed Fabian's modification request, and sought to maintain the current parenting plan, but asked for sole legal custody. The mediator recommended that Fabian and Kristi continue to have joint legal custody with Kristi having primary physical custody.

The hearing on Fabian's request (in addition to other matters) took place on November 17, 2022. Both parties were represented by counsel. The record does not contain the minute order for the hearing, and it was apparently not reported.

On April 21, 2023, the family court issued its findings and order after hearing. It denied Fabian's modification request, finding it was "not in the children's best interest to modify custody and visitation at this time." It ordered its January 21, 2022 findings and order after the October 5, 2021 hearing "remains the current custody and visitation."

B. *Contentions*

Fabian challenges the court's order. He first contends the court made procedural errors in assertedly failing to notify him about a court reporter's availability, refusing to consider his request for a statement of decision, engaging in "misconduct" in connection with its findings and order after hearing, and breaching rules pertaining to settlement of the appellate record. On the substance, Fabian argues the court misapplied the law and

---

[11]    Fabian had obtained a fee waiver from the court in mid-July 2022.

20

erroneously refused to adopt the family court services mediator's recommendations in declining to modify custody and visitation.

At the outset of his argument, Fabian states: "The trial court received a detailed recommendation from Family Court Services advocating for a modification of the visitation schedule. The recommendations were based on substantial evidence showing that the existing arrangement negatively impacts the child's [*sic*] well-being and that in agreement of both parents the visitation schedule should be modified. Despite this, the trial court denied the modification request without providing a substantial explanation or addressing the evidence presented." He argues the court's "refusal to modify custody, despite the Family Court Services' recommendations and the parents' agreement, ignored statutory preferences for joint custody (. . . § 3040) and failed to address the children's health, safety, and welfare as required by . . . [sections] 3011, 3020, 3022 and 3040. By not adequately considering changes in circumstances or the statutory criteria for modification, the court's decision was not aligned with best interest standards and statutory requirements, leading to an erroneous ruling that prejudiced the children's well-being." He argues the court erred by refusing to adopt the family court services mediator's recommendation "despite a lack of evidence suggesting that such modifications would not be in the children's best interest." He argues that error "undermined the best interests of the children and the fairness of the proceedings."

C. *Analysis*

1. *Custody*

We review the family court's custody orders under the deferential abuse of discretion standard. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255 [addressing custody and visitation orders]; *Ed H. v. Ashley C.* (2017) 14

21

Cal.App.5th 899, 904 [same]; *F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 14.) Fabian states, but does not establish with any record citation, that the court's custody order was temporary; that "no permanent orders were established at the time of the hearings [*sic*]." If there is not a final judicial custody determination, the trial court makes findings concerning custody based on a child's " best interest." (*F.T. v. L.J.*, at pp. 14-15; § 3040, subd. (a).) If there is a final custody determination in place, "a postjudgment request to modify custody requires the moving party to demonstrate not just the best interest of the child but changed circumstances. [Citation.] 'Under the so-called changed circumstance rule, a party seeking to modify a permanent custody order can do so only if he or she *demonstrates a significant change of circumstances justifying a modification.*' " (*Johnston-Rossi v. Rossi* (2023) 88 Cal.App.5th 1081, 1087, citing *Montenegro v. Diaz*, at p. 256.)

The family court in making its custody order applied the best interest standard, and absent a showing otherwise, we presume it correctly followed the law. (*S.Y. v. Superior Court* (2018) 29 Cal.App.5th 324, 334.) In assessing its ruling, we measure "whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32; *Johnston-Rossi v. Rossi, supra,* 88 Cal.App.5th at p. 1087.) A family court determining a child's best interest is required to consider, "among any other factors it finds relevant and consistent with Section 3020," "[t]he health, safety and welfare of the child," any parent's "history of abuse," and "[t]he nature and amount of contact with both parents, including as provided in Sections 3046 and 3100." (§ 3011, subds. (a)(1), (2), (3).) Section 3020 "declares that it is the public policy of this state to ensure that the health, safety, and welfare of children shall be the court's primary concern in determining the best

interests of children." (§ 3020, subd. (a).) Section 3040 provides a court making an order granting custody to either parent "shall consider, among other factors, which parent is more likely to allow the child frequent and continuing contact with the noncustodial parent, consistent with Sections 3011 and 3020." (§ 3040, subd. (a)(1).)

Fabian's contention concerning the court's refusal to modify custody confusingly says that the court was required to consider "changes in circumstances," which is contrary to his assertion that no permanent custody order was in place. His contention is also premised on the notion that the court was required to follow the family court services mediator's recommendations. He provides no authority for such a proposition, and his assertion about the mediator's recommendation is unsupported by the record in any event, as we explain below. Fabian further contends the fairness of the court's custody determination was "impair[ed]" because he could not access "essential school records, which are crucial for assessing the children's educational and developmental needs." He argues "Sections 3011 and 3020 mandate that the court consider all relevant information, including educational records, when *determining legal custody* to ensure the child's health, safety, and welfare." (Italics added.) Fabian points to his January 2022 declaration filed with the court, in which he asserted that Kristi had refused him access to official school records. He attached a principal's letter explaining that only one login for enrollment and registration was permitted per family, and asking families to create one shared email account and password. According to Fabian, that letter "confirms" that Kristi restricted his access to the records by changing login credentials "contrary to the statutory requirement for both parents to have access to pertinent information."

23

To the extent Fabian challenges the court's legal custody order on this basis, it is unavailing. Fabian sought joint legal custody, and the court retained the parties' joint legal custody status. Otherwise, Fabian's assertion that the court was required to consider the children's school records in reaching its custody order is not supported by section 3011, which does not mention or "mandate" consideration of education records, or section 3020, which sets out the public policy of California in determining children's best interests. Even if we were to concede that educational records are critical to the court's consideration, Fabian does not provide any indication what about those records, or the children's schooling or developmental needs, should have compelled the court to modify its physical custody order in a manner more favorable to him. He has not demonstrated prejudice on this record.

2. *Visitation*

As for visitation, the premise of Fabian's substantive argument—that the family court services mediator recommended he receive increased visitation and that he and Kristi "implicitly agreed" on a different visitation schedule—is not supported by the record. To the contrary, as summarized above, the mediator made the opposite recommendation: to maintain the current custody and visitation schedule. We reject Fabian's argument that the family court's "failure to adhere to [the mediator's] recommendations, without providing adequate justification, violated legal standards and constituted reversible error as established by relevant case law . . . ."[12]

_____

[12] For this proposition Fabian cites without discussion *In re Marriage of Carney* (1979) 24 Cal.3d 725, 730, *In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, and *In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068. We have reviewed those cases, which do not support the proposition that a court must adhere to a family court services recommendation unless it provides adequate justification.

24

Because Fabian's substantive arguments do not persuade us that the family court erred in its custody determination, we need not reach his procedural arguments. Fabian does not make a coherent or reasoned prejudice argument in any event as to these asserted errors. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside, or new trial granted, in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].)

VI. *November 29, 2023 Real Property Turnover Order and Elisor*

Fabian challenges the family court's decisions regarding an elisor and "to enforce a turnover order based solely on a judgment for attorney fees based on Code of Civil Procedure [s]ection 708.205 . . . ." In his "statement of facts" concerning this challenge, he provides no factual context for the court's action, other than identifying the date of the order and when he filed the notice of appeal, designation of the record, and case information statement. In a statement entitled "Elements of Action," Fabian appears to cite facts ("the property is not held by the debtor, and the [e]lisor is not able to execute the interspousal transfer") without record citation. In the body of his contentions, he purports to quote some of the court's reasoning (i.e. that "the court 'anticipates excessive litigation' and cites 'faith' instead of statutes") again without record citation.

As best we understand his argument, Fabian contends the turnover order is unlawful because Code of Civil Procedure section 708.205 limits the scope of a turnover order to personal property, not real property and is the wrong enforcement mechanism for an attorney fee order. He argues the court's order was "illogical" or unlawful because it did not give him an

25

opportunity to pay or satisfy the judgment, and "bypass[ed] established statutory procedures specifically designed for enforcing real property judgments." Fabian argues the court's decision to issue the turnover order at the same time as it imposed a new order to pay Kristi attorney fees was procedurally unfair and unreasonable because "relevant property issues [were] currently under litigation and appeal," and the court "lack jurisdiction" [*sic*] over the matter.

We first dispose of Fabian's argument concerning the elisor. He makes a bare argument that the court erred by appointing the clerk as an elisor to execute an interspousal transfer deed, since the property's ownership is on appeal, and because the transfer is "irreversible," he is prejudiced. The court did not appoint an elisor, however. Its order provides: "*If an elisor is necessary* to execute an interspousal transfer deed or any other instrument to effectuate the sale the court *will consider* granting an elisor on an ex parte basis." (Italics added.) Even if we were to consider Fabian's bare unsupported arguments, they are based on a mischaracterization of the court's order. Its order for an elisor was contingent on some need to effectuate the sale. Absent evidence the court actually appointed an elisor and the elisor took some action, on this record, Fabian cannot demonstrate prejudice.

We likewise reject Fabian's contentions concerning the lawfulness of the family court's Code of Civil Procedure section 708.205 real property turnover order. This statute "is part of an article governing judgment debtor examinations. ([Code Civ. Proc.,] § 708.110 et seq.)" (*Palacio Del Mar Homeowners Assn., Inc. v. McMahon* (2009) 174 Cal.App.4th 1386, 1389.) It authorizes the court at the conclusion of a judgment debtor examination proceeding to order "the judgment debtor's interest in the property in the

26

possession or under the control of the judgment debtor . . . to be applied toward the satisfaction of the money judgment if the property is not exempt from enforcement of a money judgment."  (Code Civ. Proc., § 708.205, subd. (a); see also *Palacio Del Mar*, at p. 1389.)  The Law Revision Commission Comments to the statute provide that "[s]ubdivision (a) of Section 708.205 continues the broad authority provided by former Section 719 for the court to order *any nonexempt property or debt* to be applied toward the satisfaction of the judgment."  (Cal. Law Revision Com. com., 17 West's Ann. Code of Civil Procedure (2009 ed.) foll. § 708.205, p. 344, italics added.)

Contrary to Fabian's assertion, the statute does not "explicitly" mention only " 'tangible or intangible personal property' that is in the possession or under the control of the judgment debtor," nor does it "confirm[ ]" that turnover orders "should not be used for real estate enforcement."  The enforcement of judgment law contains a provision expressly setting forth requirements for sales of a judgment debtor's interests in real property. (Code Civ. Proc., § 701.540; *Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 556.)  The cases Fabian cites for his propositions—"*In Re Brace* (1986) 184 Cal.App.3d 1422" ("real property should be subject to traditional enforcement mechanisms like liens and executions rather than turnover orders based solely on attorney fee judgments") and "*Dreyer's Grand Ice Cream, Inc. v. Schreiber* (2009) 179 Cal.4th 1207" ("the court indicates that turnover orders are intended to enforce personal property judgments and do not extend to real estate matters")—do not exist at the identified reporter citations.

The same is true for Fabian's case citations and arguments concerning "procedural fairness" and the "irreparable harm" that he asserts will occur by liquidating the property.  With the exception of *In re Marriage of Walker*

27

(2006) 138 Cal.App.4th 1408, *Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 830, and *Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, the provided reporter citations do not match the case names. Further, neither *Walker* nor *Kuehn* stand for Fabian's asserted propositions. *In re Marriage of Walker* involved an appellant's claim that the court incorrectly valued community real property and erred by finding she breached her fiduciary duty to the respondent. (*Walker*, at pp. 1411-1412.) At the page Fabian cites, the court discussed the impact of Corporations Code revisions to spousal fiduciary disclosure requirements of section 721 so as to determine their retroactivity. (*Walker*, at pp. 1422, 1425-1426.) *Walker* does not address sales of real property and whether they are "irreversible" or must be "conducted in accordance with legal standards or procedures." At the cited page in *Kuehn*, a case involving a demurrer, the court discussed the appellant's claim that she properly pleaded equitable relief by alleging extrinsic fraud, adequately alleged fraud and conversion, and should have been granted leave to amend. (*Kuehn*, at p. 830.) It does not support Fabian's claim that "[u]nreasonable timing in procedural actions can result in reversible error if it adversely affects a party's ability to fairly address the issues at hand."

Fabian cites *Hasson v. Ford Motor Co.*, *supra*, 32 Cal.3d 388 for the unspecific proposition that "reversible error occurs when a trial court's legal errors prejudice the outcome of the case." The court in *Hasson*—a products liability case—addressed claims of improper admission of evidence, erroneous rulings on jury instructions, and juror misconduct and whether a presumption of prejudice should arise from such misconduct. (*Hasson*, at pp. 403, 405, 407-408, 415-417.) Even if we could glean such a general proposition concerning prejudice from *Hasson* and apply it to this case, Fabian has not demonstrated error in the court's real property turnover

28

order.  Absent error, we do not reach the prejudice inquiry.  (*Valencia v. Mendoza* (2024) 103 Cal.App.5th 427, 448, fn. 20.)

### VII.  *Sale of Kristi's Nevada Property*

Fabian contends the family court made procedural errors when in its November 29, 2023 findings and order after hearing it ordered the sale of certain Nevada real property on Aspen Court.  He maintains the court "misapplied statutory law and violated procedures" because it lacked authority to mandate the sale of the Nevada property without the parties' valid stipulation or agreement under section 290.  For these propositions, he cites "*In re Marriage of Fick* (1991) 228 Cal.App.3d 10, 15" and *In re Marriage of McCann* (1996) 41 Cal.App.4th 978. 983.)

We reject the contention.  Section 290 does not support Fabian's proposition.  It provides:  "A judgment or order made or entered pursuant to this code may be enforced by the court by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary."  (§ 290.)  Fabian provides no further explanation as to how this Family Code provision supports his assertion that a family court's authorization to order a property sale is dependent on the parties' stipulation or agreement.

As for Fabian's case authorities, we could not locate a case titled "*In re Marriage of Fick*" at the designated citation: 228 Cal.App.3d 10.[13]  And *In re Marriage of McCann, supra,* 41 Cal.App.4th 978 is a case involving an order reducing monthly spousal support and whether the family court erred by considering a husband's increased child support payments as a factor (*id.* at p. 981), not a court order for the sale of real property.

Finally, even if we were to accept the argument that the court required the parties' stipulation or agreement as a predicate for its order, the record shows the parties entered into such a stipulation.  At the May 24, 2023 hearing, both Fabian and Kristi were represented by counsel.  Counsel discussed Kristi's past and current requests for section 2030 attorney fees, and a request for a property turnover order to enforce Fabian's unpaid obligations.  During those discussions, the following colloquy occurred:

[Kristi's counsel]: "*So we did stipulate that Ms. Filipp can sell her property*.  We're gonna reserve over the characterization of that to the divorce trial.  She owns that with her sister, so they will need to work together on that.  Obviously Mr. Filipp may need to sign an interspousal transfer deed—he wouldn't be giving up his ownership—just so that she can execute the sale.  Any funds that are—remain after she pays off her debts can be held in trust, just to make sure it's fair to both parties."  (Italics added.)

---

[13]    The citation brings up *People v. Spears* (1991) 228 Cal.App.3d 1, a robbery and murder case.  Elsewhere in his brief Fabian cites "*ln re Marriage of Ficke* (2005) 134 Cal.App.4th 1002."  But that case citation is to *Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997, an unfair competition case.  Though we are not required to do so, we located a case with the same title at a different reporter citation: *In re Marriage of Ficke* (2013) 217 Cal.App.4th 10, but the only issue in that case involving real property was the calculation of community and separate interests in a parent's rental property (*id.* at p. 13); the case has nothing to do with a property sale.

The court inquired about when the deed could be effected, and both counsel responded without objection.

The court then orally made various orders, and asked Kristi's counsel to prepare the findings and order after hearing. She agreed:

[Kristi's counsel]: Yes, I will. If we can just also reflect that the parties stipulated on the record that [Kristi] can sell her property as well?

[Fabian's counsel]: Yes.

The court: Okay. so we will reflect a stipulation that [Kristi] may sell her property. Is that in Nevada, is it?

[Kristi's counsel]: Yes. It's . . . Aspen.

The court: Nevada property is fine." The court then reserved the right to appoint an elisor at Kristi's request.

In its November 29, 2023 order, the court found: "The parties through their counsel, stipulate that [Kristi] may sell her shared property with her sister, located at . . . Aspen Court . . . [Nevada]."

In short, Fabian's contention that the court somehow acted in an unauthorized manner because it lacked the parties' agreement or stipulation is unsupported by the record.

31

## DISPOSITION

The postjudgment orders are affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


BUCHANAN, J.